The next case on the docket is number 518-0187. H.B.D. Construction, Inc. et al. v. Eco Jazz, Inc. et al. Arguing for the appellant, East St. Louis Housing Authority, is Mary Giles. Arguing for the appellant, Town and Country Masonry and Tuck Pointing, is Thomas Burkhardt. Arguing for the appellee, H.B.D. Construction, Inc., is Brian McGovern. Each side will have 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. The two appellants have agreed to split their time 10 minutes each, with Mr. Burkhardt going first. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. And finally, please remember no photographs. No one of the court is permitted to record these proceedings today. Counselor, are you ready to proceed? The appellant may proceed. Thank you, Your Honor. May it please the court, my name is Thomas Burkhardt. As said, I represent Town and Country Masonry, who is one of the masonry contractors on the project that H.B.D. was a general contractor for, Jazz at Walter Circle in East St. Louis. I want to go over, I think the briefs pretty well speak for themselves and touch all the issues, but I wanted to highlight four areas. The first area is probably the most curious and one of first impressions, and that is Town and Country claimed that it was due a lien on public funds. The court did not allow a lien on public funds, but instead ordered that there was a mechanics lien under the Mechanics Lien Act. Section 23 of the Mechanics Lien Act deals with liens on public funds. We introduced evidence that $23,900,000 and some odd change of HUD funds were deposited into the East St. Louis and Echo Jazz checking accounts. That was TCMT Exhibit 45, which was a letter from the Chicago office of HUD basically saying that. So there are public funds that are involved here. The question is, it was a mixed-use type of thing where not only were public funds involved, but there was also some private funds. The Mechanics Lien Act is not exactly tailored to a mixed-use thing, but I still believe because public funds were involved, Town and Country was entitled to a lien on those public funds. All of the notices that were required by law were in fact done. Elizabeth Tolliver, the Executive Director of the East St. Louis Housing Authority at the time, took the stand and testified that they in fact did receive those notices. So we should have been allowed a lien on public funds. The second area I want to talk about briefly is the amount due. Judge McGlynn adopted Brian Cowart of HBD's version of how much was due to TCMT. This was not a case where the question was whether any amount was due. There was always known to have been an amount due, and that was approximately $88,500 is what the judge actually adopted. But what we're saying is that's against the manifesto way of the evidence because there was testimony of Deb Harshney of Town and Country, Jeff White of Town and Country, and an independent party that was actually with Echo Jazz, David Jackson. And what David Jackson testified to is that there was a meeting in January of 2013 where all the parties got together. Brian Cowart of HBD, Jeff White of Town and Country, and the owners from East St. Louis and Echo Jazz all got together and they called it a whiteboard meeting. There's pictures of whiteboards that were entered into evidence. And at the end of that meeting, Jackson, the independent guy, said the amount that was determined to be owed to TCMT was just north of $200,000. Well, the amounts that Jeff White and Deb Harshney talked about was $138,700, $61,000 for some great platinum brick that they bought, and that $61,000 was for materials that were used on the other masonry contractor that got involved in the case. Initially, it was just Town and Country, but they split it off before the project started, and a contractor named Peebles was involved. Peebles was overpaid on the account. He also testified and even said that HBD actually took money out of a second job from him because they got overpaid on the job. What was happening is they would never pay the amount Town and Country asked for. It was always split up. There were, in fact, 40 payments made to Town and Country, and Town and Country only gave 12 pay requests. The whole project was going awry, but I think if you look at all of the testimony that was done, we had three witnesses testifying to the right amount of $200,000 and only Mr. Cowart on behalf of HBD with his $88,000. Now, the other thing about that is on cross-examination, Mr. Cowart admitted that the exhibit he was using was constructed just days before trial and contained a lot of back charges that Town and Country had never even heard of. Deb Harshnie agreed with that. The other area that I wanted to talk about was the ruling on attorney's fees. The contract did provide for attorney's fees, and it said the prevailing party would be entitled to all their attorney's fees. There wasn't an issue with regard to the amount. I produced an affidavit and offered myself a cross-examination, and nobody did it, so the amount's right there. The question is whether there was a prevailing party. I suggested in my brief that we were the prevailing party and qualify as one because the contract says you're a prevailing party if you recover 75% or more of the amounts you're claiming, and you're also a prevailing party if you have to pay no more than 25% of the other party's total claims in the action. Well, HBD got a judgment of $5 million. Town and Country doesn't have to pay any of it. There's no order ruling against Town and Country to pay anything, so I qualify for the second prong there to become a prevailing party, and if this court accepts the testimony of Harshnie, White, and Jackson and overturns the ruling on the damages and gives us the right amount of damages, we will also have recovered more than 75% of damages. So we should have been awarded all our attorney's fees. Finally, the Prompt Pay Act. That's the fourth area. The Prompt Pay Act, as the court knows, is designed to make sure not only contractors get paid, but it's designed to protect the local government's money, the taxpayers' money. There's no question that we introduced exhibits that show HBD was paid everything under the masonry part of the project. I think it was $1.5 million, and there's no question that at the time of trial, four years after the project was completed, there was money owed to Town and Country. Just those facts alone show that we didn't get paid when HBD got paid, so the trial court's decision on that issue, we believe, is against the manifesto weight of the evidence. As of June 30, 2013, HBD had been paid all of the $1.5 million of masonry work. As I said, Brian Cowart conceded that HBD still owed Town and Country money for their part of the job. So there was a Prompt Pay Act that should have been allowed. Those are the four areas I wanted to step on. I won't take any additional time. I'll defer to HBD unless there's questions from the court. I see no questions. Okay, Brian. It's all yours. We don't have any audio. Do you have your audio turned on? It's on mute. Now you are. Go ahead. Mr. McGavin, there you go. He should be able to hear you now. Thank you, Your Honor. My name is Brian McGavin. I'm the attorney for Apelli HBD Construction Incorporated. I'd like to address just the issues that Mr. Burkhardt has raised and start with just the amount. The testimony from Mr. Cowart was unrefuted. It's Exhibit 184. Mr. Court had done a significant review of all of the records with respect to this project. He had done a significant review of all the various submittals from all of the contractors and concluded that, in fact, Town and Country was owed the $88,000 Mr. Burkhardt has mentioned. There were issues with respect to the testimony that was provided. Regarding Mr. White's testimony, what Mr. Burkhardt did mention is that he had signed a lien waiver. However, the lien waiver that was produced doesn't demonstrate that, in fact, there was full payment on some of these issues. There were not canceled checks or other evidence establishing that, in fact, they had paid for both gray bricks and charcoal gray bricks, which were an issue. There was a question with respect to the $61,000, and that had to do with Mr. Peebles' work. And, again, HBD did a significant reconciliation of all of the vendors of the balances that were due and were able to demonstrate that, in fact, that was not amounts that were, in fact, due to Town and Country. The standard, I think Mr. Burkhardt has mentioned it generally, is that they have to demonstrate in a judge trial case, following the bench trials, whether the trial court's decision was against the manifest weight of the evidence. A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence presented. Again, the testimony and the evidence presented by Mr. Court was unrefuted, and the court found it to be, in fact, reliable. Regarding the attorney's fees, the contract in Section 9.5, and it's a subcontract under the section Attorney's Fees and Expenses of the Subcontract, it says the prevailing party is a party who recovers at least 75% of its total claims in the action or is willing or is required to pay no more than the 25%. HPD did not have a claim against Town and Country. Town and Country was brought into the litigation pursuant to the mechanics lien statute that requires that all parties be included. Now, in order for Town and Country to collect on attorney's fees, it would have had to recover an award of at least $150,000. Again, they were claiming the $200,000. At $150,000, that would be 75%. We know from the court's ruling that, in fact, they only received $88,000, which would be 44.2%. So under the specific language of the subcontract, they are not entitled to the attorney's fees. They were not a prevailing party. Regarding the claim for the Prompt Pay Act, the Prompt Pay Act applies to vendors, contractors whose claims against any state official or agency authorized to provide for payment from state funds. There's no state official or agency involved. As Mr. Burkhart indicated, this is a contract between two private parties. You've got EcoJazz, who was the owner, and you have HPD Contracting, who was the general contractor on the project itself. There's no state office or official or agency involved. There's also no state funding. What you're going to hear is this project was funded in a manner which was very unique. It was funded in part by HUD and the other part by private equity. You're going to see, and as you've seen in the evidence, there was some $4 to $8 million in private equity that went into this project. In return for that $4 to $8 million, one of the venture capital groups received $17 million in new market tax credits. This does not qualify and satisfy the requirements of the Prompt Pay Act. Now, the other issue with respect to the Prompt Pay Act is counsel withdrew his request to amend the petition. And when doing that, they no longer had the ability to continue with respect to the claim. The question was asked if they're going to amend, and in fact, he indicated that they would. If I could just request clarification on time. Is that showing 7.42 left for my 20 minutes? Yes. With that, then I will conclude on this part of the argument on town and country. Go ahead. I'm sorry. I'm confused on how the time is working. Okay. All right. Okay. Good afternoon, and may it please the court. My name is Mary Giles, and I represent the appellant, the housing authority of the city of East St. Louis, against appellee HBD Construction, Inc. The housing authority is appealing seven orders entered by the circuit court in St. Clair County after a bench trial of the issues. The seven orders impress mechanics liens on real property owned by the housing authority of East St. Louis. The single issue on appeal by the housing authority is whether the trial court erred in impressing those liens against real property owned by the housing authority. The underlying facts in this case are relatively straightforward. The housing authority owns three parcels of land. It entered into a lease with EcoJazz to develop the land and build an affordable housing project. The affordable housing development was built on four parcels, one actually owned by EcoJazz and three owned by the housing authority, but leased to EcoJazz for development and management. When I refer to the property during this argument, I'm referring specifically to the three parcels owned by the housing authority. EcoJazz entered into a contract with appellee HBD to build the affordable housing and related structures. HBD was the general contractor for the project. The project had a bunch of issues which led to cost overruns and construction delays and which then resulted in the underlying suit and the orders currently being appealed. The housing authority by statute is a municipal corporation. Its argument and basis for the appeal is relatively simple. Illinois' mechanics lien statute explicitly prohibits the entry of mechanics liens on real property owned by municipal corporations. There's no dispute that the housing authority is a municipal corporation. Instead, a lien can only attach to the portion of the public funds that were used for the public improvement, as also stated by Mr. Burkhart. Case law in Illinois, even well before the enactment of the mechanics lien statute, has been steadfast in its protection of public land from mechanics liens. In its response brief, HBD was unable to cite to even one case in which a mechanics lien was impressed on real property owned by a municipal corporation, such as the housing authority, and wasn't turned over on appeal. The only case cited to by HBD, the NRA California Steel Company case, was easily distinguished. The real property in that case was owned by the Chicago Metropolitan Sewer District, a public entity created at the state level by statute. It is not a local body of government created by local Cook County government or by Chicago, and in the statute it's defined as a body corporate and politic. Whereas the housing authority has expressly denoted a municipal corporation in its statute, and municipal corporations are protected by the Illinois mechanics lien statutes. HBD also focuses on the nature of the housing authority lease with EcoJazz. A lease, by the way, which has since been terminated given that EcoJazz is a defunct, HBD argues that the 99 year lease entered into between EcoJazz and the housing authority classifies EcoJazz as the fee simple owner of the property. And if the lease wasn't with the housing authority entered into for the sole purpose of constructing and developing affordable public housing for senior citizens, I would agree with HBD's position. They certainly can point to a lot of cases which support the premise that normally a 99 year lease is for all intents and purposes the fee simple owner, the lessee is. However, and again, none of those cases involve a housing authority or municipal corporation. And furthermore, the Illinois housing authority statutes allow for housing authorities to lease its land. The housing authority acted within the purview of the statutes that create and govern it, and shouldn't be stripped of their statutory protections for doing so. And again, HBD's recitation of cases doesn't involve municipal corporations and the enforcement of mechanics liens against them. HBD makes a few other arguments in its response brief. First, it argues that the project was for a private purpose, and therefore loses its protections for public projects. There's no evidence or case law cited to support that, and it ignores the finished project being in fact public affordable housing under the purview and subject to regular inspections by HUD, as are all public housing developments. The final argument raised by HBD in its response is that by raising both public and private funding for the project, it's removed from the protections afforded by the housing afforded the housing authority by the mechanics and statute. However, the housing authority program was created by statute to, and I quote here, for the purpose of developing and coordinating public and private resources targeted to meet the affordable housing needs of low income and very low income households in the state of Illinois, end quote. It's hard to fathom that a public housing authority created by statute to raise public and private funds to develop affordable housing will lose its other statutory protections for doing just that. To briefly sum up my arguments, there's no authority either by statute or case law which supports HBD's position. The trial court didn't err when it impressed mechanics liens on real property owned by the housing authority. The housing authority has acted completely in accordance with the statutes that create and govern it from its entry into a lease to the money raised in support of its project to provide public housing to senior citizens in St. Clair County at an affordable rate. The housing authority is asking that the orders entered by the trial court and pressing mechanics liens against the subject property be vacated to the extent that they impose mechanics liens on the property owned by the housing authority. And that is my argument, unless there are any questions from the court. Any questions? I have no questions. Okay, now I think we'll go to the Mr. McGovern to get your full time. Thank you, Your Honor. I think we should, because of this, I think we should back up and give you full time. Unless you have any objections, I see none. I appreciate that, Your Honor. Okay, you may proceed. Okay, please, the court. Thank you. I want to start by first talking about the project itself, as counsel has mentioned some of the issues. This project was unique. It is the one that is financed in a manner different than any other project in the United States, and that was all brought in through the testimony. What has not been mentioned is that this project was also going to include various commercial uses. They had a grocery store that was in the building, a medical office, commercial grade catering kitchen, and a stage was even put in place for purposes of running a jazz club if they chose to do so. This was not simply a housing project. What is also unique and very unique about this project is the manner in which it was financed. This was done significantly through private funds. It was done through new market tax credits, in which over $4 to $8 million were brought into this project from private sources. $17 million in tax credits were then utilized as part of this project itself. We heard about Echo Jazz, and there was an individual, a la Tunde Ogundeko, who went by the name Tunde, who testified at trial. Mr. Tunde worked for a company known as Signature Program Management. That entity was the representative of Echo Jazz. It was the one responsible to oversee the project itself, oversaw construction, and we know that post-construction played a significant role in the management of the building itself. During the course of closing arguments, Esla's counsel made several judicial admissions in which he indicated Esla does not own the building. He testified, not testified, but argued Esla was not the owner of the project. Esla has no right to access the building and, in fact, did nothing relative to the management of the building itself. They were not the owner of the building or of the project. I think it's important to take a look at what does the Mechanics' Lien statute say itself. Section 770 ILCS 6023 says the statute does not apply to a contract for public improvement for a contractor having a contract with such municipal corporation. Well, we know there is no contract with municipal corporation here. The contract is between two private entities. Echo Jazz was the legal owner of the property in this position that we take, and we have argued, pursuant to the 99-year leasehold interest that it had regarding the property. HPD had a contract with Echo Jazz to do the improvements, which it did. The property itself was unimproved before the construction began and had little to no value, which was the testimony. A Mechanics' Lien on a 99-year leasehold interest can be foreclosed. We also cite to the case of Furr Construction, which is one involving a special master, an eight-story building, in which the project did go to foreclosure, pursuant to the Mechanics' Lien. Regarding the idea of the 99-year lease, we have cited to the case of Mattat v. Barnsteel. And in that case, the court held that Barn Heisel, as a lessee for 99 years, was, within the purview of Section 1 of the Liens Act, an owner. And that is the position that we are taking. Now, that is significant, because when you look at the Mechanics' Lien statute as to what it does apply to, it says that any person, so the Mechanics' Lien Act applies to any person who shall, by any contract with the owner of a tract or lot of land, is known under this act as a contractor and has a lien upon the whole of such lot or tract of land itself. HPD had a contract with the owner, and we contend that it had that contract based upon the 99-year lease. In terms of the public improvement, we have a contractor. In this instance, we have a municipal corporation, which did not have a contract in terms of public improvement. We have, again, the commercial use. This was a contract between two private entities, and, again, the commercial use for the project itself involved the grocery store, a medical office, commercial-grade catering kitchen, and stage for a jazz club itself. Again, there was private funding, so it is very unique as to how they went about doing this particular project. One other issue that East St. Louis Housing does raise in their reply brief is they raised the issue of the Illinois Affordable Housing Act, and that act itself, we suggest, does not apply. The IAHA provides a statutory scheme only for the Illinois Housing Development Authority itself, which is an independent, self-supporting state agency. ESLA incorrectly states that IAHA gives ESLA the statutory protection to coordinate public and private resources. However, when you look at the act itself, it says the act only provides the powers of the program administrator. The program administrator means the IHDA. So, from that standpoint, even though we contend that the argument was raised late, it is in the reply brief, and we argue that it should not be applied. The conclusion that leaves respect to the argument being raised by East St. Louis Housing Authority in summary is that this is a private owner. It is a private contract between private parties. It involves significant private financing, and it involves significant commercial purposes. Even the underlying housing itself, which we recognize this is a senior living facility, was constructed based upon tax credits, which were utilized by venture capital firms located outside the state of Illinois and in other parts of the country. They put significant money into this project, all private money, and the other source of the funds came from housing and urban development. If I could, Your Honor, I would like to go back to some of Town and Country's arguments at this point with my time that I have left. I have a question. I'm glad you're going back there. I have a question regarding that part of the argument. You had mentioned at the end of your first iteration of that argument that TCMT is not to be considered a prevailing party because they were not awarded 75% of its claim. Did you address the other aspect of that prevailing party language with regard to the 25% that they would have had to have paid your client in order to not be considered a prevailing party? Let me do that now, Your Honor. I think I did that in part, and then we stopped. When you look at the provision contained within the contract, and again, it's section 9.5 of the subcontract under attorney's fees and expenses of subcontract, you're correct in that it says the prevailing party is a party who recovers at least 75% of its total claim in the action, which they did not do. We know that. Then it says or is required to pay no more than 25% of the other party's total claims in the action. Now, in this instance, HBD did not bring a claim against Town & Country. Instead, Town & Country was brought into the case under the Mechanics Lien Act because all cases or all contractors who are bringing Mechanics Lien claims have to be brought into the case. That's why that was done. So the second part after the or which is written in the disjunctive, it says who is required to pay no more than 25% of the other party's total claims in the action. HBD did not have a claim against Town & Country. So in this instance, what HBD did was bring an action on behalf of itself as well as all of the subcontractors on the project who had claims. The Mechanics Liens involve not just HBD's Mechanics Lien, but as Ms. Giles points out, there were several others from other contractors, but there was no direct claim against Town & Country. So the second part of that requirement of the contract does not apply. Okay. Thank you. May I take some of my time to rebut? No, let's wait until, you know, to get to, you'll have rebuttal. Okay. I'll wait. The Town & Country claim with respect to the Prompt Payment Act, again, the Prompt Payment Act indicates that it applies to vendors and contractors' claims against any state official or agency authorized to provide for payment from state funds. Again, we know that didn't happen. There was no state official or agency involved. It was ECHOJS. It was the owner of the property. And again, as the tenant or the lessee of a 99-year lease, we think MATAT supports that proposition. There was also no state funding that would allow for the application of the State Prompt Payment Act. This was all funded through HUD, as well as the private-private equity that we've mentioned. In sum, $48 million in private equity went into this project. Again, this is where I think I may have left off. Town & Country abandoned its claim under the Illinois State Prompt Payment Act. During the course of the trial, the question was asked, and questions were being asked, from Ms. Hanischay, which would have been relative to the Prompt Payment Act issue. During the course of that questioning, Mr. Burkhardt indicated and stated to the court, Your Honor, I might be able to clear this up. I'm withdrawing my motion for leave to amend. Mr. Burkhardt, this was Judge McGlynn asking, There will not be a Prompt Payment Act case on our cutoff. Does that help you? And at that point, the questioning by myself on behalf of HBD ended relative to any issues regarding the Prompt Payment Act. Now, in Hutchinson, the case cited in our brief, in which the court questioned whether or not a particular claim was going to go forward, the attorney indicated, I have withdrawn any complaint, any charge, any allegation dealing with downstate, Your Honor. And based upon downstate, meaning claims based upon certain tickets sold at downstate locations, the appellate court held, it is clear from the trial counsel's comments that such a claim had been withdrawn from all counts. We believe that applies to what occurred in this instance, in that Mr. Burkhardt indicating that he was not going to be amending his petition, which would have included the prompt pay claim. Regarding the issue of TMT, or Town and Country, not being paid in full, what HBD was, that was based upon Exhibit 47, which was an exhibit utilized during the, or not, it was discussed during the course of the trial, but was never admitted in evidence. Generally, a document must be offered by its proponent and admitted into evidence by the trial court before it may be considered evidence. In this case, Mr. White testified, could have testified about the document, could have authenticated the document itself, but for whatever reason chose not to, and Exhibit 47 was not admitted into evidence. In terms of what HBD did, in terms of payments made on the project, what the court held, and this is pertaining to Count 4 of Town and Country's claim, the trial court stated that HBD has reasonable cause to pay out when it did and how it did to Town and Country. All the delays and shortchanging lies directly at the feet of Signature Management, which is Echo Jazz, which would be Tunday, and the relief sought in Count 4 of the petition was therefore denied. The court went on to note that under the Prompt Pay Act, the contractor is not liable for full payments if the contractor is reasonable in doing so. If the contractor, without reasonable cause, fails to make full payment of the amounts due. In conclusion, Your Honors, what HBD is simply asking is that the ruling of Judge McGlynn be upheld. We think that based upon the standard and the standard of review in this case, that a judgment is against the manifest weight of the evidence, where the opposite conclusion is clearly evident, where the finding is unreasonable, arbitrary, or not based on the evidence presented, just simply has not been demonstrated regarding the appeal. It is our position that, in fact, Judge McGlynn was correct, that he based his decision off of his review of the evidence, as well as his ability to witness the testimony from the witnesses in the case. Again, I go back to what this is really about, and it is a contract between private parties in which you have a private owner, you have private contractors, private financing, and a building which included these commercial uses. So, again, we are requesting that the orders entered by Judge McGlynn be upheld, and that the mechanics lien be permitted to stand regarding this particular project. Thank you. Thank you, counsel. Now it's time for Mr. Burkhardt. I'd like to address, first of all, the issue of the second clause of the attorney's fees and the definition of prevailing party. For HBD's argument to hold water, they would be adding words to that clause, between the parties. The clause doesn't say claims between the parties. And what HBD is saying, oh, well, that section doesn't apply because, you know, HBD didn't have a claim against TCMT. They certainly had claims in the action. Those are the key words. They had claims in the action, over $5 million worth of them, and town and country was not ordered to pay a dime of that. So we, in fact, aren't ordered to pay up to 25% of the claim that HBD made. Now, for his argument, like I said, to hold up, he'd have to add words to the contract and limit the claim to being between the parties. That's not what the contract says. So that issue. HBD had been awarded $5 million plus, right? Yes. Okay. Yes. But, again, going back to that argument on attorney's fees, we believe that it was against the manifest way to evidence. We had three different witnesses testify with regard to the amount of damages, whereas HBD only had one. Now, Mr. Cates did get in a little bit, and he had even different figures than Mr. Cowart did. In any event, we think that we have basically won on the attorney's fee issue under both. If you award us the amount of damages we were entitled to, then we will have recovered 75%, and we still have not paid 25%. So that's the issue on the attorney's fees. You can't erase the testimony about Exhibit 47. Whether it was admitted into evidence or not, the testimony came from the witnesses under oath, and they're part of the record on appeal. And so the testimony about when they got paid is in the record, and we know what the facts are. HBD got paid, and they failed to pay Town & Country. Even if we took Cowart's figures, they failed to pay $88,000 of it, and they got paid the full amount of masonry contract well before the conclusion of the project. So there's that. One other thing that came up that I would like to address and rebuttal, and I don't know what effect it has to, because it is, again, a problem with this being a mixed-use project. There are public funds and some private funds. The majority is all public funds. But talking about who the parties are now, somebody mentioned the fact that Echo Jazz is now defunct. I guess it is. But Mrs. Toliver, the executive director of the East St. Louis Housing Authority, testified under oath that Echo Jazz was a nonprofit affiliate of the East St. Louis Housing Authority. I believe they're both the same, and that's why I think our claim on public funds should be upheld. And we should be allowed, and Judge McGlynn even said when he was dealing with this, he certainly was going to allow us post-judgment discovery to try and find out where this $29 or $32 million went, because it wasn't all spent. I think, and HPD can correct me if I'm going to use approximations, but I think the total of this project was somewhere in the neighborhood of $20 million. So there was still a lot of money left over. In fact, David Jackson testified that he personally saw Mr. Tunde deposit a $12 million check into an Illinois State Bank account, and that only $100,000 of that was used to pay architectural fees on phase two of this three-phase project for housing in East St. Louis. So there was money there. Our lien should have been impressed upon public funds of the East St. Louis Housing Authority. And then we can go and find out where they are, where it all is. Other than that, unless there are questions from the court, I'll stand on my brief as fine. Thank you, counsel. The case will be taken under advisement and the order be issued due course. You're excused. Thank you, Your Honor. Thank you. I guess we just leave.